UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SPECIALTY VEHICLE ACQUISITION
CORPORATION, a Delaware corporation,

        Plaintiff,
                                        Case No. 07-13887

v.
                                        Honorable Patrick J. Duggan

AMERICAN SUNROOF CORPORATION,
a Michigan corporation, and DMITRI
CHEVTSOV, an individual,

        Defendants.
_____/


**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT AGAINST DEFENDANT CHEVTSOV ON COUNTS I-III, V-VI,
AND IX OF THE COMPLAINT AND DENYING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT AGAINST DEFENDANT CHEVTSOV ON COUNT X
OF THE COMPLAINT**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on July 18, 2008.

PRESENT:        THE HONORABLE PATRICK J. DUGGAN
                U.S. DISTRICT COURT JUDGE


This is a trademark dispute between Specialty Vehicle Acquisition Corporation

("Plaintiff" or "SVAC") and American Sunroof Corporation and Dmitri Chevtsov[1]

---

[1]Defendant Chevtsov is proceeding *pro se*. In addition, on June 4, 2008,
Defendant Chevtsov filed a Notice of Name Change, informing the Court that he has
changed his name to Dmitri Odin. For ease of reference, the Court will refer to Dmitri
Odin as Dmitri Chevtsov. Moreover, in an Opinion and Order issued on February 7,
2008, the Court entered a default as to Defendant American Sunroof Corporation. (*See*
Doc. No. 28 at 2-3.)

(collectively referred to as "Defendants").  On September 14, 2007, Plaintiff filed a

complaint asserting federal and state law causes of action arising out of Defendants'

alleged unlawful use of Plaintiff's trademarks.[2]  Presently before the Court are the

following motions filed by Plaintiff: (1) Motion for Summary Judgment Against

Defendant Chevtsov on Counts I-III, V-VI, and IX of the Complaint; and (2) Motion for

Summary Judgment Against Defendant Chevtsov on Count X of the Complaint.  On July

9, 2008, this Court sent the parties a notice stating that the Court is dispensing with oral

argument on Plaintiff's motions.  *See* E.D. Mich. LR 7.1(e)(2).

## I.    Factual Background

In 1965, Mr. Heinz Prechter founded the American Sunroof Company and first

started using the AMERICAN SUNROOF COMPANY name in commerce that year.

(Pl.'s Mot. Ex. 17, Declaration of Steven G. Laurain ("Laurain Decl.") ¶ 7.)  Throughout

the years, American Sunroof Company "came to be known as ASC, Inc. or simply ASC."

(Pl.'s Mot. Ex. 1, Declaration of Mark Trostle ("Trostle Decl.") ¶ 10.)  ASC, Inc., in

addition to engaging in other business, manufactured and installed convertible roof

---

[2]More specifically, Plaintiff's complaint asserts ten separate counts: Count I
(Trademark Infringement in Violation of the Lanham Act – 15 U.S.C. § 1114); Count II
(False Designation of Origin in Violation of the Lanham Act – 15 U.S.C. §
1125(a)(1)(A)); Count III (Federal Unfair Competition in Violation of the Lanham Act –
15 U.S.C. § 1125); Count IV (False or Misleading Advertising in Violation of the
Lanham Act – 15 U.S.C. § 1125(a)(1)(B)); Count V (Common Law Unfair Competition);
Count VI (Common Law Trademark Infringement); Count VII (Unjust Enrichment Under
Michigan Common Law); Count VIII (Cancellation of Defendant's Federal Trademark
Registration No. 3198661); Count IX (Michigan Consumer Protection Act § 445.903);
and Count X (Federal Trademark Cyberpiracy in Violation of 15 U.S.C. §
1125(d)(1)(A)).

systems. (Trostle Decl. ¶ 24; Laurain Decl. ¶ 24.) ASC, Inc. also owned "various patents directed to convertible roof systems." (Laurain Decl. ¶ 16.)

During its existence, American Sunroof Company "adopted and used a variety of trademarks and service marks to allow customers to readily distinguish its goods and services from competitors." (*Id.* ¶ 8.) These marks include AMERICAN SUNROOF COMPANY and "ASC in a variety of fonts and styles." (*Id.* ¶ 9.) ASC, Inc. began using its "ASC marks in commerce in 1971." (*Id.*; *see also* Trostle Decl. ¶ 23 (explaining that ASC, Inc. has used its ASC marks in commerce since at least 1973).)

In May 2007, after more than thirty-nine (39) years of ASC, Inc.'s continuous use of its trademarked name AMERICAN SUNROOF COMPANY, Plaintiff "acquired certain ASC, Inc. assets for a considerable sum, including ASC, Inc.'s rights to the marks ASC and AMERICAN SUNROOF COMPANY, along with the associated good will."[3] (Laurain Decl. ¶ 3 (referring the "Acquisition Agreement" attached as Exhibit 7 to Pl.'s Mot.).) On October 15, 2007, Plaintiff filed documents with the State of Michigan

---

[3]More specifically, the Acquisition Agreement entered into between Plaintiff and ASC, Inc. stated that Plaintiff acquired all

> right, title and interest in and to all of the assets, properties, goodwill, rights and business of every kind and description and wherever located, whether tangible or intangible . . . to which [ASC, Inc.] is entitled . . . including all Intellectual Property that is used in the Business, including that which is set forth in Section 1.1(a)(ii).

(*See* Acquisition Agreement at 2.) ASC, Inc.'s AMERICAN SUNROOF COMPANY and ASC marks are included in Section 1.1(a)(ii) of the Acquisition Agreement. (*See id.* at 5-6.)

3

allowing it to do business under the name ASC, Inc.  (*See* Pl.'s Ex. 23, Certificate of Assumed Name.)

After Plaintiff acquired the AMERICAN SUNROOF COMPANY and ASC marks, it learned that Defendants used the domain name <ASCusa.com>, which appears to have been registered on October 3, 2001.  (*See* Pl.'s Mot. Ex. 19.)  Defendant American Sunroof Corporation is the listed "registrant" of this domain name, and Defendant Chevtsov is designated as "administrative" and "technical" contact for this domain name. (*See id.*)

In February 2006, Defendant Chevtsov incorporated Defendant American Sunroof Corporation by filing Articles of Incorporation, which are for use by "Domestic Profit Corporations," stating that American Sunroof Corporation was being formed for the purposes of "[e]ngineering, manufacturing and distribution of automobile systems and components including convertible hardtops and sunroofs."  (Pl.'s Mot. Ex. 22.) Defendants began using the <ASCusa.com> domain name in March 2006.  (Doc. No. 12 at 1.)  In 2007, Defendant American Sunroof Corporation's filed a "Profit Corporation Information Update" with the State of Michigan, certifying that its purpose and activities included those originally listed in its Articles of Incorporation and listing Defendant Chevtsov as the sole shareholder, president, secretary, treasurer, and director.  (*Id.*)

At the time this action was commenced, Defendants' website, which was previously located at <ASCusa.com>, stated: "American Sunroof is an independent corporation dedicated to the development of the lightest, fastest and the most robust convertible roof systems for production roadsters."  (Pl.'s Mot. Ex. 20.)  Defendants' website includes

marks that are similar to Plaintiff's AMERICAN SUNROOF COMPANY and ASC

marks.  In addition, Defendants' website contains what appears to be an endorsement

from ASC, Inc.'s founder, Heinz Prechter.  (*See id.*)

Plaintiff initiated this action on September 14, 2007 seeking monetary, injunctive,

and declaratory relief relating to Defendants' alleged infringement of, among other marks,

Plaintiff's AMERICAN SUNROOF COMPANY and ASC marks.[4]

## II.  <u>Standard of Review</u>

This Court will grant summary judgment "if the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to

any material fact and that the movant is entitled to judgment as a matter of law."  FED. R.

CIV. P. 56(c).  No genuine issue of material fact exists for trial unless, by viewing the

evidence in a light most favorable to the nonmoving party, a reasonable jury could return

a verdict for that party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct.

2505, 2510 (1986).  The moving party bears the burden of informing this Court of the

basis for its motion and identifying those portions of the record that establish the absence

of a material issue of fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct.

2548, 2553 (1986).

Once the moving party has met its burden, Rule 56(e)(2) requires the nonmoving

---

[4]Also at issue in this litigation are Plaintiff's ORB design, ORB design + ASC, and
SUNBURST design marks.  Plaintiff's AMERICAN SUNROOF COMPANY and ASC
marks are the only marks at issue in Plaintiff's present motions for summary judgment.
The registrations for Plaintiff's AMERICAN SUNROOF COMPANY and ASC marks
are attached as Exhibits 2 and 3 to Plaintiff's motions.

party to look beyond the pleadings and designate specific facts showing that a genuine issue exists for trial. FED. R. CIV. P. 56(e)(2); *Celotex*, 477 U.S. at 322-24, 106 S. Ct. at 2552-53. It is not enough that the nonmoving party comes forward with the "mere existence of a scintilla of evidence . . . ," *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512, or some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). Rather, the nonmoving party must present significant probative evidence in support of its opposition to the motion for summary judgment. *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).

## III. <u>Applicable Law and Analysis</u>

### A. **Trademark Infringement Claims**

In one of its motions, Plaintiff seeks summary judgment, with respect to its AMERICAN SUNROOF COMPANY and ASC marks, on its federal trademark infringement (Count I), false designation of origin (Count II), federal unfair competition (Count III), common law unfair competition (Count V), common law trademark infringement (Count VI), and Michigan Consumer Protection Act (Count IX) claims. To obtain summary judgment on each and all of these claims, Plaintiff must show that there is no genuine issue of material fact that Defendant Chevtsov's alleged unlawful activities resulted in a "likelihood of confusion." *Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006)(holding that the "likelihood of confusion" test applies to claims for trademark infringement, unfair competition, and false designation brought under the Lanham Act); *Carson v. Here's Johnny Toilets, Inc.*, 698 F.2d 831, 833 (6th Cir. 1983)(holding the

same as to claims of unfair competition brought under Michigan common law);

*Homeowners Group v. Home Mktg. Specialists*, 931 F.2d 1100, 1105 n.1 (6th Cir. 1991)

(holding the same as to claims brought under Michigan Consumer Protection Act).

The Sixth Circuit has held that eight factors should be considered when determining

whether there is a likelihood of confusion:

> (1) strength of plaintiff's mark; (2) relatedness of the goods;
> (3) similarity of the marks; (4) evidence of actual confusion;
> (5) marketing of channels used; (6) degree of purchaser care;
> (7) defendant's intent in selecting the mark; and (8) likelihood
> of expansion in selecting the mark.

*Audi AG*, 469 F.3d at 542-43. These factors "imply no mathematical precision, and a

plaintiff need not show that all, or even most of the factors listed are present in any

particular case to be successful." *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1186 (6th Cir.

1988).

With respect to the first factor, "[t]he strength of a mark is a factual determination of

the mark's distinctiveness. The more distinct a mark, the more likely is the confusion

resulting from its infringement, and therefore the more protection it is due." *Frisch's*

*Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1264 (6th Cir. 1985). The Sixth Circuit

has held that "[a] mark is strong and distinctive when 'the public readily accepts it as the

hallmark of a particular source.'" *Daddy's Junky Music v. Big Daddy's Family Music*,

109 F.3d 275, 280 (6th Cir. 1997)(citations omitted).

As Plaintiff contends, its registrations for three of its ASC marks are incontestable

under 15 U.S.C. § 1065. Pursuant to § 1065, "[a] trademark becomes 'incontestable' if it

is not successfully challenged within five years of its registration." *Daddy's Junky Music*,

109 F.3d at 282 (citing 28 U.S.C. § 1065). When a trademark is "incontestable," it "is presumed to be at least descriptive with secondary meaning, and therefore is a relatively strong mark." *Wynn Oil Co. v. Am. Way Serv. Co.*, 943 F.2d 595, 600 (6th Cir. 1991)(quoting *Dieter v. B & H Indus.*, 880 F.2d 322, 329 (11th Cir. 1989)). Therefore, Plaintiff's ASC marks, in three of its registered styles, are at least relatively strong marks.

With respect to its AMERICAN SUNROOF COMPANY mark, Plaintiff has provided evidence that ASC, Inc. adopted the name American Sunroof Company in 1965, and this name was continuously used for the next thirty-nine years until 2004 when ASC, Inc. announced "that it was changing the meaning of its full name from **AMERICAN SUNROOF COMPANY** to **AMERICAN SPECIALTY CARS**." (Laurain Decl. ¶ 11 (emphasis in original).) Moreover, the unrefuted declaration of Mr. Steven G. Laurain, the current General Manager of SVAC doing business as ASC, Inc., states that "[c]ustomers . . . continue to associate the AMERICAN SUNROOF COMPANY mark with SVAC d/b/a ASC, Inc." (*Id.* ¶ 12.) One such customer, "still issues purchase orders to SVAC d/b/a ASC, Inc. that are directed to AMERICAN SUNROOF COMPANY." (*Id.* ¶ 14 (emphasis in original); *see also* Pl.'s Mot. Ex. 24 (containing purchase order issued to AMERICAN SUNROOF COMPANY).)

The Court also notes that there is evidence in the record showing that SVAC acquired the AMERICAN SUNROOF COMPANY and ASC marks "for a considerable sum" on May 1, 2007. (Laurain Decl. ¶ 3 (referring the "Acquisition Agreement" attached as Exhibit 7 to Pl.'s Mot.).) This too is evidence of the strength of Plaintiff's AMERICAN SUNROOF COMPANY and ASC marks. *See Sterling Brewers, Inc. v.*

*Schenley Indus., Inc.*, 441 F.2d 675, 679 (C.C.P.A. 1971)(stating that a buyer's willingness to pay a considerable sum for the rights to a trademark and the associated good will is "substantial evidence that the mark still had significance as an indication of origin and a symbol of good will").

With respect to both its ASC and AMERICAN SUNROOF COMPANY marks, Plaintiff also contends that "for years, ASC, Inc. and SVAC engaged in extensive advertising and promotional campaigns under the ASC and AMERICAN SUNROOF COMPANY marks." (Pl.'s Br. at 9.) According to Mark Trostle, President of Plaintiff's Creative Services division and former employee of ASC, Inc., ASC, Inc.'s annual advertising expenditures "associated with the ASC, AMERICAN SUNROOF COMPANY, [and other marks that are not the subject of Plaintiff's motion] was [*sic*] approximately $700,000 to $1,000,000 for the year 2004, approximately $700,000 to $1,000,000 for the year 2005, and approximately $300,000 to $500,000 for the year 2006." (Trostle Decl. ¶ 19.) "Advertising expenditures can potentially aid in creating public recognition." *Midwest Guaranty Bank v. Guaranty Bank*, 270 F. Supp. 2d 900, 910 (E.D. Mich. 2003). Consequently, ASC, Inc.'s advertising expenditures for the ASC and AMERICAN SUNROOF COMPANY marks are further evidence of the strength of these marks.

As to the second factor, the Sixth Circuit has held that "if the parties compete directly by offering their goods or services, confusion is likely if the marks are sufficiently similar." *Daddy's Junky Music Stores v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 282 (6th Cir. 1997). While Defendant Chevtsov, in his response brief, denies

"any commercial use of [P]laintiff's trademarks," (Def.'s Resp. Br. at 2), suggesting that Defendants are not offering any goods or services on their website, the undisputed evidence in this record shows that Defendants intended to offer goods or services through their website, or at least advertise that good and services would be available if an interested party contacted Defendants. Defendants' website states that "American Sunroof is an independent corporation dedicated to the development of the lightest, fastest and most robust convertible roof systems for production roadsters." (Pl.'s Mot. Ex. 20.) Defendants' website also contains various illustrations of convertible roof systems, discussing them in detail. (*Id.*) Plaintiff, like ASC, Inc. before it, manufactures and installs convertible roof systems. Moreover, the parties both own and offer licenses to patents in various convertible roof systems. (*See* Doc. No. 12 at 4.) Finally, as stated above, the undisputed evidence shows that Defendant Chevtsov formed Defendant American Sunroof Corporation as a for-profit corporation. In light of the evidence showing that Defendants at least intended to make commercial use of Plaintiff's AMERICAN SUNROOF COMPANY and ASC marks, Defendant Chevtsov's conclusory statement in his response brief that he denies any commercial use of Plaintiff's trademarks is insufficient to create a genuine issue of material fact. Accordingly, the Court believes that consumers "are likely to believe that the [convertible roof systems] . . . come from the same source, or are somehow connected with or sponsored by a common company." *Daddy's*, 109 F.3d at 283.

The third factor, similarity of marks, "is a factor of considerable weight. When analyzing similarity, courts should examine the pronunciation, appearance, and verbal

translation of conflicting marks." *Daddy's*, 109 F.3d at 283 (internal and other citations omitted). With respect to its ASC mark, Plaintiff contends that the Defendants' use of the <ASCusa.com> domain name is likely to cause confusion. The Sixth Circuit has held that "with respect to domain names, addition of characters along with the mark 'does not eliminate the likelihood of confusion.'" *Audi AG*, 469 F.3d at 543 (quoting *PACAAR Inc. v. Telescan Techs.*, 319 F.3d 243, 252 (6th Cir. 2003), *overruled on other grounds KP Permanent Make-up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 125 S. Ct. 542 (2004)). Based on *Audi AG* and *PACAAR, Inc.*, Defendants' addition of "usa" to Plaintiff's ASC mark in their domain name does not eliminate the likelihood of confusion resulting from Defendants' <ASCusa.com> domain name. Nor does addition of the top level domain indicator ".com" to the <ASCusa.com> domain name eliminate the likelihood of confusion. *See* 1 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION 7:17.1 at 38 (4th ed. 2008)("[T]he fact that the hypothetical trademark SATURNWHEELS.COM for tires contains a [top level the domain indicator ".com"] does not make it any less confusingly similar to the senior user's SATURN for automobiles.")(hereinafter referred to as "MCCARTHY'S").

Plaintiff also argues that its AMERICAN SUNROOF COMPANY mark is substantially similar to Defendant American Sunroof Corporation's name. Indeed, "[t]he presence in both conflicting marks or trade names of commonly used generic indicators such as 'Inc.,' 'Co.' or 'Ltd.' cannot either add to or lessen any likelihood of confusion that would otherwise exist." 4 THOMAS MCCARTHY'S § 23:49 at 205. Plaintiff's AMERICAN SUNROOF COMPANY mark and Defendant American Sunroof

Corporation's name are identical without their "generic indicators." Therefore, this Court finds that Defendant Chevtsov's addition of "Corporation" his company's name does not eliminate the likelihood of confusion between Plaintiff's AMERICAN SUNROOF COMPANY mark.

With respect to the fourth factor, Plaintiff admits that it "is not currently aware of instances of actual confusion." (Pl.'s Br. at 13.) Although "[e]vidence of actual confusion is undoubtedly the best evidence of likelihood of confusion," *Wynn Oil*, 839 F.2d at 1188, "[d]ue to the difficulty in securing evidence of actual confusion, a lack of such evidence is rarely significant." *Daddy's Junky Music*, 109 F.3d at 284. Consequently, in light of the absence of evidence on actual confusion, the Court will rely on the other "likelihood of confusion" factors.

The fifth "factor requires a court to consider the similarities and differences between the predominant customers of the parties' respective goods or services" and the similarities and differences between the parties' "marketing approaches." *Id.* at 285. In this case, it is undisputed that Plaintiff and Defendants both use or used the internet as a tool for marketing. *See generally* http://www.ASCglobal.com (ASC, Inc.'s website); http://www.ASCusa.com (Defendants' website, which is no longer in use). As stated by the Sixth Circuit, the "[s]imultaneous use of the Internet as a marketing tool exacerbates the likelihood of confusion, given the fact that 'entering a web site takes little effort – usually one click from a linked site or a search engine's list; thus, Web surfers are more likely to be confused as to the ownership of a web site than traditional patrons of a brick-and-mortar store would be of a store's ownership." *PACAAR*, 319 F.3d at 252 (citation

omitted).  Therefore, the parties' simultaneous use of the internet as a marketing tool exacerbates the likelihood of confusion.

As to the sixth factor, "in assessing the likelihood of confusion to the public, the standard used by the courts is the typical buyer exercising ordinary caution." *Homeowners Group, Inc. v.  Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1111 (6th Cir. 1991).  "However, when a buyer has expertise or is otherwise more sophisticated with respect to the purchase of the services at issue, a higher standard is proper."  *Id.* Plaintiff argues that "[t]his Court can take judicial notice that the purchase of a convertible roof system by the end-use consumer is secondary to the decision to purchase the car to which it is attached.  As such, consumers are not likely to exercise a heightened degree of care, at least insofar as the source of the convertible roof system is concerned." (Pl.'s Br. at 14.)  This Court agrees with Plaintiff.

With regard to the sixth factor, the Sixth Circuit has "noted that 'the intent of defendants in adopting [their mark] is a critical factor, since if the mark was adopted with the intent of deriving benefit from the reputation of [the plaintiff], that fact alone may be sufficient to justify the inference that there is confusing similarity."  *Audi AG*, 469 F.3d at 544 (quoting *Frisch's Rests.  v. Elby's Big Boy*, 670 F.2d 642, 648 (6th Cir.  1982)).  A party can prove intent with circumstantial evidence.  *Id.*

The undisputed evidence in the record supports an inference that Defendant Chevtsov intended to derive benefit from Plaintiff's AMERICAN SUNROOF COMPANY and ASC marks.  Plaintiff's have adduced evidence that Defendant Chevtsov knew about ASC, Inc.'s prior use of the AMERICAN SUNROOF COMPANY and ASC

marks.  At the November 29, 2007 hearing on Plaintiff's motion for a preliminary

injunction, the following colloquy occurred:

> THE COURT:         No, ASC didn't change their name,
>                    American [Sunroof] Company changed
>                    its name.  They still used the ASC
>                    symbol, correct?
>
> MR. CHEVTSOV:  Yes.
>
> THE COURT:         You've known that all along,  haven't
>                    you?
>
> MR. CHEVTSOV:  Yes, absolutely.
>
> .     .     .
>
> THE COURT:         You, knew when you put it as part of
>                    your domain [name], that those letters
>                    had some significant meaning.
>
> MR. CHEVTSOV:  Yes.
>
> THE COURT:         You didn't just go, "Oh, I think I'll call
>                    is ASC."
>
> MR. CHEVTSOV:  No, your Honor –
>
> THE COURT:         Why did you pick ASC?
>
> MR. CHEVTSOV:  I was hunting this domain [name] for two
>                    years before I was able to buy it.  You
>                    think it's just simple to go online and
>                    register a six-letter domain [name],
>                    they're all taken.
>
> THE COURT:         Why did you select ASC as part –
>
> MR. CHEVTSOV:  Because it's abbreviation of my
>                    company's name.
>
> THE COURT:         Well, you knew that that was the letters

associates with the plaintiff's company.

MR. CHEVTSOV:   Yes, I foreknew [*sic*]. . . .

(Pl.'s Mot. Ex. 18, 11/29/07 Hearing Tr. at 36-38.)  Furthermore, Defendant Chevtsov

acknowledged at his deposition that "consumers associate the ASC marks with [the]

company in Southgate, Michigan."  (Pl.'s Mot. Ex. 25, Chevtsov Dep. at 37.)

Further evidence of Defendant Chevtsov's intent to derive benefit from Plaintiff's

AMERICAN SUNROOF COMPANY and ASC marks is Defendants' use of Plaintiff's

ASC mark in their <ASCusa.com> domain name and the repeated references to "ASC" in

Defendants' website.  For example, a previous version of Defendants' website falsely

stated that "[i]n 2006 Chevtsov acquired ASC's trademarks" and refers to the "asc

Fliptop" as "old name, new product."  (Pl.'s Mot. Exs. 20 & 21.)  Moreover, Defendants'

website uses or used Defendant American Sunroof Corporation's name and contains a

purported endorsement from Heinz Prechter, the founder of ASC, Inc.  (*See id.*)

In summary, the Court believes that the undisputed evidence in the record creates an

inference that Defendant Chevtsov intended to derive a benefit from using Plaintiff's

AMERICAN SUNROOF COMPANY and ASC marks.

With respect to the eighth factor, likelihood of expansion of product lines, the Court

has already stated that the parties are in the business of designing convertible roof

systems for automobiles.  Thus, their product lines already overlap.

In response to Plaintiff's properly supported motion for summary judgment as to

Counts I-III, V-VI, and IX of the complaint, Defendant Chevtsov fails to set forth any

evidence, much less significant probative evidence, showing that a genuine issue of

material fact exists for trial. *See Moore*, 8 F.3d at 340. Consequently, based on the Court's analysis of the likelihood of confusion factors above, the Court finds that as a matter of law Defendant Chevtsov's use of Plaintiff's AMERICAN SUNROOF COMPANY and ASC marks is likely to cause confusion. *See WSM, Inc. v. Tenn. Sales Co.*, 709 F.2d 1084, 1086 (6th Cir. 1983)(stating that "likelihood of confusion is a question of law and thus an appropriate issue for summary judgment"). Furthermore, insofar as any of the acts described above were committed by Defendant American Sunroof Corporation, this Court finds that Defendant Chevtsov, as the sole shareholder, president, secretary, treasurer, and director, is personally liable for Defendant American Sunroof Corporation's infringement.[5] *Babbitt Elecs., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1999)("[A] corporate officer who directs, controls, ratifies, participates in, or is the moving force behind infringing activity, is personally liable for such infringement without regard to piercing the corporate veil."); *see also* 4 MCCARTHY'S § 25:24 at 62-63 (stating the same). Accordingly, Plaintiff's motion for summary judgment as to Counts I-III, V-VI, and IX will be granted.

### B.    Anticybersquatting Consumer Protection Act Claim

Plaintiff also moves for summary judgment against Defendant Chevtsov as to Count X of its complaint, which asserts a claim under the Anticybersquatting Consumer

---

[5]Throughout the course of this litigation, Defendant Chevtsov has acknowledged that any action conducted by Defendant American Sunroof Corporation was in fact conducted by him. (*See, e.g.*, Doc. No. 47, Def.'s Resp. Br. at 3 ("I publicly declare that any actions of American Sunroof Corporation are in fact conducted by me, Dmitri Chevtsov."))

Protection Act ("ACPA"), 15 U.S.C. § 1125(d). Plaintiff argues that Defendant Chevtsov violated the ACPA by registering and using the <ASCusa.com> domain name with a bad faith intent to profit.

Although Plaintiff moves for summary judgment against Defendant Chevtsov on its ACPA claim (Count X), liability under the ACPA is limited to the "domain name registrant or that registrant's authorized licensee." 15 U.S.C. § 1125(d)(1)(D)("A person shall be liable for using a domain name under subparagraph (A) only if that person is the domain name registrant or that registrant's authorized licensee."). Here, the undisputed evidence shows that Defendant American Sunroof Corporation is the "registrant" of the <ASCusa.com> domain name. (*See* Pl.'s Mot. Ex. 19.) Defendant Chevtsov is merely designated as the "Administrative" and "Technical" contact for the <ASCusa.com> domain name, (*see id.*), and there is no evidence in the record showing that Defendant Chevtsov is an "authorized licensee" of the <ASCusa.com> domain name. Consequently, Defendant Chevtsov cannot be held liable under the ACPA. Therefore, Plaintiff's motion for summary judgment against Defendant Chevtsov will be denied.[6]

---

[6]The Court recognizes that its finding that Defendant Chevtsov cannot be held liable under the ACPA may be at odds with statements it made in an Opinion and Order issued on April 30, 2008, in which it denied, without prejudice, Plaintiff's Motion for Statutory Damages, Transfer of Domain Name, and Cancellation of Trademark Registration against Defendant American Sunroof Corporation as to Count X of the complaint. With respect to Plaintiff's request for statutory damages, the Court in the April 30, 2008 Opinion and Order held that "entering a money judgment against [Defendant American Sunroof Corporation] under Count X as a result of [Defendant American Sunroof Corporation's] default could result in inconsistent monetary awards should [Defendant Chevtsov] be held liable as to Count X." (Doc. No. 39, 4/30/08 Op. & Or. at 3.) Although the Court's denial of Plaintiff's request for statutory damages is no longer supported by the fact that it could result in "inconsistent monetary awards should

## IV.  Injunctive Relief Against Defendant Chevtsov In His Personal Capacity[7]

To remedy Defendant Chevtsov's trademark infringement, Plaintiff also moves for a permanent injunction.  As set forth above, Plaintiff is entitled to summary judgment against Defendant Chevtsov as to liability for Counts I-III, V-VI, and IX of the complaint for Defendant Chevtsov's infringement of Plaintiff's AMERICAN SUNROOF COMPANY and ASC marks.

Permanent injunctive relief is available to a plaintiff when it satisfies a four-factor test.  "A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that

---

[Defendant Chevtsov] be held liable as to Count X (because Defendant Chevtsov cannot be held liable under Count X), the Court continues to believe that Plaintiff should move for one monetary award against Defendant Chevtsov, Defendant American Sunroof Corporation, or both after liability as to each Defendant regarding all of Plaintiff's claims is determined.  Furthermore, with respect to Plaintiff's previous request for a transfer of the <ASCusa.com> domain name based on Defendant American Sunroof Corporation's default, the Court denied this request, without prejudice, in the April 30, 2008 Opinion and Order because "it [was] unclear whether [Defendant American Sunroof Corporation] owns the domain name," and the Court also stated that it was denying Plaintiff's request for a transfer "without prejudice pending the outcome of Count X as to [Defendant Chevtsov]."  (4/30/08 Op. & Or. at 4.)  As indicated, the outcome of Count X as to Defendant Chevtsov has been determined.  Consequently, because the undisputed evidence in the record now shows that Defendant American Sunroof Corporation is the "registrant" of the <ASCusa.com> domain name, Plaintiff may renew its motion for a transfer of this domain name pursuant to 15 U.S.C. § 1125(d)(1)(C)(stating that in any civil action under the ACPA "transfer of the domain name to the owner of the mark" is a remedy).

[7]On July 18, 2008, the Court entered an order permanently enjoining Defendant American Sunroof Corporation, as well as Dmitri Chevtsov in his capacity as the sole shareholder, president, secretary, treasurer, and director of Defendant American Sunroof Corporation, from using all of Plaintiff's trademarks that are at issue in this litigation. Consequently, the Court construes Plaintiff's request for a permanent injunction against Defendant Chevtsov, to remedy his infringement of Plaintiff's AMERICAN SUNROOF COMPANY and ASC marks, as a request to enjoin Defendant Chevtsov in his personal capacity.

remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839 (2006)(citations omitted).

With respect to the first factor, whether Plaintiff has suffered irreparable injury, the Sixth Circuit has stated that irreparable injury "ordinarily follows when a likelihood of confusion or possible risk to reputation occurs." *Wynn*, 943 F.2d at 608. Because the Court has found that Defendant Chevtsov has used Plaintiff's AMERICAN SUNROOF COMPANY and ASC marks in a manner that is likely to cause confusion, Plaintiff has established that it has suffered an irreparable injury.

Furthermore, the Court finds that there is no adequate remedy at law for Defendant Chevtsov's potential future infringement of Plaintiff's AMERICAN SUNROOF COMPANY and ASC marks. *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988)(stating that "there is no adequate remedy at law for the injury caused by a defendant's continuing infringement").

As to the third factor, the Court finds that the balance of hardships favors the issuance of the requested permanent injunction. Here, there is no indication that Defendant Chevtsov will suffer a hardship if a permanent injunction issues. Plaintiff, on the other hand, would be irreparably harmed if a permanent injunction did not issue.

Finally, the Court believes that issuing the requested permanent injunction would be in the public's interest. Preventing consumer confusion is in the public's interest, *see*

*Audi*, 469 F.3d at 550 (holding that it was in the public's interest to issue an injunction "in order to prevent the consumers from being confused"), and this Court believes that issuing the requested permanent injunction would do just that.

Having determined that the above factors, the Court finds that they weigh in Plaintiff's favor, and thus, the Court will issue the requested permanent injunction against Defendant Chevtsov.

## V.    Conclusion

Based on the foregoing, Plaintiff is entitled to summary judgment against Defendant Chevtsov as to Counts I-III, V-VI, and IX of the complaint. Plaintiff is also entitled to a permanent injunction against Defendant Chevtsov enjoining him from all future use of Plaintiff's AMERICAN SUNROOF COMPANY and ASC marks.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for summary judgment as to Counts I-III, V-VI, and IX of the complaint is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment as to Count X of the complaint is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Chevtsov, in his personal capacity, is **PERMANENTLY ENJOINED** from using Plaintiff's AMERICAN SUNROOF COMPANY and ASC marks, and any confusingly similar mark, including AMERICAN SUNROOF CORPORATION.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Monte L. Falcoff, Esq.
George T. Schoof, Esq.

Dmitri Chevtsov n/k/a Dmitri Odin
5645 Eastman Blvd.
West Bloomfield, MI 48323